UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

_____
                                    :
UNITED STATES OF AMERICA            :
                                    :   Crim. No. 18-113 (NLH)
                                    :
     v.                             :
                                    :
JOHN COTTLE,                        :   **OPINION**
                                    :
          Defendant                 :
_____ :


**APPEARANCES**:

JOHN COTTLE
#30276-050
SCHUYLKILL
FEDERAL CORRECTIONAL INSTITUTION
INMATE MAIL/PARCELS
P.O. BOX 759
MINERSVILLE, PA 17954

     *Pro Se*

BENJAMIN LEVIN
OFFICE OF THE U.S. ATTORNEY
970 BROAD STREET
STE 7TH FLOOR
NEWARK, NJ 07102

     *Counsel for the United States*


**Hillman, District Judge**

     Before the Court is John Cottle's ("Defendant") Motion for

Reduction of Sentence under the First Step Act, 18 U.S.C. §

3582(c)(1)(A).  (2018 Matter, ECF 22).[1]  For the reasons expressed below, Defendant's Motion will be denied.

**Background**

On July 19, 2010, Defendant pleaded guilty to possession of a weapon by a convicted felon in violation of 18 U.S.C. § 922(g)(1).  (2009 Matter, ECF 37).[2]  Thereafter, the Court sentenced him to a term of incarceration of 72 months and a 3-year term of supervised release.  (2009 Matter, ECF 41).  The Court also ordered Defendant to forfeit the handgun that was the basis of his offense.  (Id.)

On June 2, 2017, the Government filed a new complaint alleging that Defendant committed carjacking on December 1, 2016, in violation of 18 U.S.C. §§ 2119(1) and 2.  (2018 Matter, ECF 1).  The complaint also alleged that Defendant unlawfully possessed a handgun and brandished it while committing the carjacking in violation of 18 U.S.C. §§ 922(g)(1) and 924(c)(1)(A)(iii).  (Id.)  The complaint was later superseded by a one-count information alleging possession of a weapon by a convicted felon in violation of 18 U.S.C. § 922(g)(1).  (2018 Matter, ECF 14).  On March 9, 2018, Defendant pleaded guilty to

---

[1] References to the "2018 Matter" refer to the prosecution at 1:18-cr-00113-NLH (D.N.J.).

[2] References to the "2009 Matter" refer to the prosecution at 1:09-cr-00727-NLH (D.N.J.).

the information.  (2018 Matter, ECF 16).  Defendant also filed an application to plead guilty to violation of the terms of supervised release in the 2009 Matter, but the Court deferred acceptance of the plea pending the filing of an amended petition for the issuance of a summons or arrest warrant by the Office of Probation ("Probation").  (2009 Matter, ECF 51).  On March 14, 2018, Probation filed such an amended petition alleging that Defendant had committed multiple crimes, had not reported to substance abuse treatment, did not maintain employment, and did not report to Probation as required.[3]  (2009 Matter, ECF 52). The Court indicated that same day that the amended petition was set to be resolved in connection with the 2018 Matter.  (Id.)

On July 27, 2018, the Court accepted Defendant's plea in the 2009 Matter and sentenced him in both the 2009 Matter and the 2018 Matter.  (2009 Matter, ECF 53; 2018 Matter, ECF 20). For the violation of supervised release, the Court sentenced Defendant to a term of incarceration of 24 months and one year of supervised release.  (2009 Matter, ECF 54).  For the 2018 Matter, the Court sentenced Defendant to a term of incarceration of 120 months along with a 3-year term of supervised release and ordered Defendant to forfeit his handgun.  (2018 Matter, ECF

---

[3] The March 14, 2018 petition by Probation was an amended petition that represented a consolidation of petitions relating to the aforementioned violations of supervised release.

3

21).  The terms of incarceration were to run consecutively for a total term of 144 months.  (Id.)

On February 9, 2021, in the 2018 Matter, Defendant filed the instant pro se motion for compassionate release under First Step Act 18 U.S.C. § 3582(c)(1)(A) based on COVID-19.  (2018 Matter, ECF 22).  On April 14, 2022, the Government filed a letter in opposition to the motion.  (2018 Matter, ECF 25).  The Court considers Defendant's Motion against this factual backdrop.

**Discussion**

**A. Legal Standard for Compassionate Release**

"The First Step Act empowers criminal defendants to request compassionate release for 'extraordinary and compelling reasons.'"  United States v. Raia, 954 F.3d 594, 595 (3d Cir. 2020) (quoting 18 U.S.C. § 3582(C)(1)(A)(i)).  Before bringing a motion for reduced sentence on their own behalf, defendants first "must ask the Bureau of Prisons to do so on their behalf, give the BOP thirty days to respond, and exhaust any available administrative appeals."  Id.  "Thus, under the First Step Act, a defendant seeking a reduction in his term of imprisonment bears the burden of satisfying both that he has (1) exhausted remedies before seeking judicial review, and (2) that compelling and extraordinary reasons exist to justify compassionate release."  United States v. Sellers, 2020 WL 1972862, at *1

4

(D.N.J. Apr. 24, 2020) (citing 18 U.S.C. § 3582(C)(1)(A)); see also Raia, 954 F.3d at 595.

At this second step, a court may reduce an inmate's sentence pursuant to 18 U.S.C. § 3852(c)(1)(A) if after finding extraordinary and compelling reasons warrant a reduction, that such a reduction would be consistent with applicable policy statements issued by the Sentencing Commission and that the applicable sentencing factors under § 3553(a) warrant a reduction. United States v. Pabon, 458 F. Supp. 3d 296, 300 (E.D. Pa. 2020).

B. **Analysis of Motions for Compassionate Release**

   a. **Defendant has satisfied the exhaustion requirements**

Defendant applied to the BOP for compassionate release on November 14, 2020 and was denied on December 4, 2020. (2018 Matter, ECF 22 at 1). The Government does not dispute that Defendant has exhausted his administrative remedies. (2018 Matter, ECF 25 at 3). Thus, the Court deems the administrative exhaustion requirement for his motion.

   b. **Defendant fails to establish "extraordinary and compelling reasons" for his release**

Defendant's proffered reasons why he is a good candidate for release in light of the COVID-19 pandemic are sparse. Defendant argues that his medical condition of asthma constitutes an "extraordinary and compelling reason" justifying

5

his release. (2018 Matter, ECF 22 at 2).  Defendant contends that his asthma places him at a high risk for more adverse outcomes than the general population if he contracts COVID-19. (Id.)

The Government contests Defendant's position.  They acknowledge that asthma is a risk factor associated with COVID-19 identified by the Centers for Disease Control and Prevention (the "CDC").  (2018 Matter, ECF 25 at 4).  However, they argue that the fact that Defendant is fully vaccinated and boosted and has already recovered from COVID-19 counsels against considering his asthma as an "extraordinary and compelling reason" justifying his release.  (Id. at 4-5).  Further, the Government highlights that scientific data shows that the COVID-19 vaccines are highly effective in preventing serious illness, including against the Omicron variant.  (Id. at 5-6).  They cite to cases from district courts around the country supporting a growing consensus that where an inmate is vaccinated, he or she does not meet the standard for compassionate release save for rare situations.  (Id. at 6-8).  Finally, they state that Defendant's medical records show that the BOP has been adequately treating his asthma with an inhaler.  (Id. at 8).

The Court certainly takes seriously Defendant's asthma diagnosis.  But Defendant has not sufficiently shown how his condition is exacerbated by COVID-19 where he is fully

6

vaccinated and has previously recovered from the virus. Raia, 954 F.3d at 597 ("[T]he mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread.");

The applicable guidance from the Sentencing Commission falls under Comment 1 under § 1B1.13 of the guidelines. U.S.S.G. § 1B1.13, cmt. n.1(A).[4] The Court cannot say that Defendant suffers from conditions that fall into the same categories as "metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced

---

[4] While the Court looks to § 1B1.13 as directed to by the statute, it is not, standing alone, a determinative factor in light of a lack of quorum which has prevented the Sentencing Commission from updating § 1B1.13 in response to the First Step Act. That said, the Third Circuit has approved a district court's consideration of § 1B1.13 when it comes to evaluating motions for compassionate release filed by prisoners. United States v. Andrews, 12 F.4th 255, 260 (3d Cir. 2021), cert. denied, No. 21-1208, 2022 WL 994375 (U.S. Apr. 4, 2022) ("The court correctly recognized that although the policy statement is no longer binding, it still sheds light on the meaning of extraordinary and compelling reasons."). Even if the Court were to assume that a revised § 1B1.13 would expand the breadth of medical situations warranting release, the result here would not be different. As set forth in more detail in this Opinion, the Defendant fails to demonstrate that his personal circumstances and jail conditions in light of the pandemic alone, or in tandem, represent extraordinary and compelling reasons warranting a sentence reduction and that the applicable sentencing factors under § 3553(a) similarly support such a reduction.

dementia[,]" examples offered by the Sentencing Commission of the types of illnesses that might constitute "extraordinary and compelling circumstances." Id.  It also cannot say that Defendant's condition substantially "diminishes the ability of [Defendant] to provide self-care within the environment of a correctional facility and from which he...is not expected to recover." Id.  Though the Court accepts that Defendant's condition could make his incarceration challenging, the Court does not find sufficient evidence in the record to show that he cannot care for himself.  While the CDC has identified asthma as a risk factor associated with COVID-19,[5] courts have held that the mere fact that a defendant has a condition listed as a risk factor by the CDC is not enough to warrant compassionate release. United States v. Hicks, No. 20-3512, 2021 WL 4316829, at *2 (3d Cir. Sept. 23, 2021) (affirming district court's holding that the defendant's asthma did not present an "extraordinary and compelling reason" justifying release where it was managed by the BOP); United States v. Muhammad, No. CR 14-502 (SDW), 2021 WL 568076, at *2 (D.N.J. Feb. 16, 2021), aff'd, No. 21-1311, 2022 WL 296593 (3d Cir. Feb. 1, 2022) ("[E]ven though people with asthma might be at an increased risk of

---

[5] CENTERS FOR DISEASE CONTROL AND PREVENTION, COVID-19, PEOPLE WITH CERTAIN MEDICAL CONDITIONS, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited June 2, 2022).

8

severe illness from COVID-19, they are not definitively at an increased risk. Defendant's medical records indicate that his asthma is currently controlled and that he has received appropriate medical monitoring and treatment of his condition including the prescription of an inhaler and oral steroids when required.") (internal citations omitted). In the absence of specific evidence personal to this Defendant showing a more heightened risk, the Court declines to find that Defendant has made a showing of medical conditions, even with the possibility of contracting COVID-19, which warrant his release.

Further, FCI Schuykill, where Defendant is housed, has mitigation efforts aimed at controlling the spread of the coronavirus that appear to be effective. Currently, FCI Schuykill has no active inmate tests and three staff positive tests.[6] Over the course of the pandemic, no inmates have died as a result of infection by COVID-19, and 491 inmates have recovered from positive infections.[7]

In addition, according to the BOP, 1,147 inmates at FCI Schuykill have been fully vaccinated.[8] Given the well-

---

[6] See FEDERAL BUREAU OF PRISONS, COVID-19 CORONAVIRUS COVID-19, https://www.bop.gov/coronavirus/ (last visited June 2, 2022).

[7] Id.

[8] Id.; According to the BOP, the current inmate population at FCI Schuykill as 1,100 inmates. FEDERAL BUREAU OF PRISONS, OUR LOCATIONS, https://www.bop.gov/locations/list.jsp (last visited June 2,

9

established and accepted evidence that the available vaccines are both safe and effective, the Court finds that the vaccination rate inside FCI Schuykill weighs against Defendant's request for relief.

After a review of the record as a whole, the Court finds that Defendant, who currently seems to be managing his condition effectively at FCI Schuykill, does not present "extraordinary and compelling reasons" supporting his release.

### c. 3553(a) Factors weigh against Defendant's Favor

Even if Defendant could "establish extraordinary and compelling reasons" for his release, the Court may reduce an inmate's sentence only if the applicable sentencing factors under § 3553(a) warrant a reduction.  Here, they do not.

Defendant argues that his post sentencing conduct indicates that "he has made enormous strides regarding his overall rehabilitation." (2018 Matter, ECF 22 at 2).  He states that he has completed a program on parenting as well as a program in culinary arts which would enable him to find employment in the food service industry upon his release.  (Id.)  He highlights the drug education courses he has taken while with the BOP and that fact that he has not had any disciplinary infractions

---

2022).  It is not clear whether the fact that the number of vaccinations at the facility exceeds the inmate population is due to inmate releases or transfers.  In any case, it is clear that the vaccination rate is high at FCI Schuykill.

10

during his incarceration. (Id.) Finally, Defendant states that if released he would reside with his wife who would assist with his reintegration into society. (Id.)

The Government argues that the § 3553(a) factors counsel against relief given the seriousness of the carjacking that underlies Defendant's conviction in the 2018 Matter. (2018 Matter, ECF 25 at 9). They underscore that Defendant has committed multiple other serious and violent crimes and that this is Defendant's second firearm-related conviction. (Id.) Given this and Defendant's high risk of recidivism, the Government states that early release would be inconsistent with providing adequate deterrence. (Id.) Finally, they argue that Defendant already received a rather low sentence given his criminal conduct and a further reduction would create sentence disparities with other similarly situated defendants. (Id.)

The Court sees no reason to disturb the term of the overall consecutive sentences it imposed in the 2009 and 2018 Matters. Specifically, Defendant was involved in a serious violent carjacking even after he had previously been convicted of a firearm-related offense. 18 U.S.C. § 3553(a)(1). Indeed, in imposing Defendant's sentences, the Court considered Defendant's repeated violation of the trust of the Court in violating the terms of his supervised release. 18 U.S.C. § 3553(a)(2)(A). Deterrence, both specific and general, also militates against

11

release given the violence of the offense and the fact that Defendant has committed multiple offenses in the past. Id. at § 3553(a)(2)(B).  Defendant's repeated flouting of the law suggests that recidivism is still an active concern in this case and underscores the need to protect the public from further crimes that he may commit.  Id. at § 3553(a)(2)(C).  Finally, a further reduction of Defendant's sentence given the severity of the underlying conduct of the offense would create an unwarranted sentencing disparity among similarly situated defendants.  Id. at § 3553(a)(6).  The advent of COVID-19 does not change the balance in Defendant's specific situation where he has not shown that he is at a materially increased risk of serious illness or death while incarcerated and that there has been a material difference in the § 3553(a) factors that animated his current overall sentence.  Thus, the Court declines to grant Defendant's Motion for compassionate release.

**Conclusion**

　　For the reasons set forth above, Defendant's Motion for Reduction of Sentence under the First Step Act, 18 U.S.C. § 3582(c)(1)(A) (2018 Matter, ECF 22) will be denied.  An accompanying Order will issue.


Dated: June 5, 2022                    s/   Noel L. Hillman
At Camden, New Jersey                  NOEL L. HILLMAN, U.S.D.J.